# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTA L. FORD, | ) 1:07cv0564 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Roberta L. Ford ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for supplemental security income and disability insurance benefits pursuant to Title XVI and Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On April 25, 2007, the Honorable Lawrence J. O'Neill reassigned the case to the undersigned for all purposes.

1

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed her applications for supplemental security income and disability insurance benefits on August 21, 2003, alleging disability since February 1, 1998, due to left knee arthritis and constant pain. AR 70-73, 123-130, 557-571. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 51-55, 57-61, 62. On March 28, 2005, ALJ Fenton H. Hughes held a hearing. AR 575-595. He denied benefits on April 13, 2005. AR 15-24. On March 8, 2007, the Appeals Council denied review. AR 5-7.

<u>Hearing Testimony</u>

ALJ Hughes held a hearing on March 28, 2005, via video conference. Plaintiff appeared with her attorney, Robert Christenson. Her husband, Marvin Ford, and Vocational expert ("VE") James Grief also appeared and testified. AR 575.

Plaintiff was 38 years old at the time of the hearing. AR 580. She lives with her husband and children, ages three and six. AR 585. Her six year old is in school. AR 585.

She testified that she stopped working in 1998 because of a left knee injury, and has had at least eight or nine surgeries on her left knee. AR 579. She has constant, severe pain and arthritis in her left knee, which sometimes causes it to give out. AR 580. She sometimes has to use a cane because it is hard for her to get around when she's out of her house. She can walk and stand without the cane, but not for long periods. At home, getting around is a little easier because she can go at a slower pace and stop and rest. AR 581.

Plaintiff also testified that she has neck pain that began last year, when she fell down the stairs after her knee gave out and hit her mid-back and head. She also explained that she "hasn't been the same" since a car accident in 1998. AR 581. The pain in her neck depends on the day and the amount she can lift and carry has deteriorated over the years. She can't carry 10 pounds for two to three hours over an eight hour day because of her back. AR 582. She can't stand for more than 30 minutes at a time without having difficulty. AR 582. She takes rest breaks during

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

the day and uses the cart at the grocery store. AR 583. When she is at home with her children, she has to take two breaks an hour, for about 10 minutes each. AR 583. She can't sit for more than one to one and a half hours at a time. AR 584. She tries to elevate her leg as much as possible when she's home and keep hot and cold packs on it. AR 584. She tries to elevate it every hour to hour and a half, for 5 to 15 minutes, since she is "constantly going with the kids." AR 584. Her pain affects her concentration. AR 585.

On a typical day, she gets her son off to school and goes back to bed until her younger child, Destiny, wakes up, usually between 9 and 10 am. AR 586. She has problems going up and down stairs. AR 586. She can drive for about 10 to 15 minutes before her back starts hurting, but her husband does most of the driving. AR 586.

The ALJ asked the VE if Plaintiff could perform any of her past work with a light residual functional capacity ("RFC") with occasional postural limitations. VE Grier testified that Plaintiff could perform her past work fast food work and clerical mail clerk. AR 589-590.

Plaintiff's husband, Marvin Ford, testified that Plaintiff is in constant pain and always tired. She takes seven to eight breaks a day, for about 15-20 minutes each. She has trouble walking and standing and has trouble with her knee. AR 591-592. Plaintiff has been using a cane for about a month. AR 592. Her pain makes her irritated, so he has to help out with cooking and giving the children attention. AR 592.

Medical Record

X-rays of Plaintiff's left knee taken on March 13, 1998, revealed the medial tibial plateau to be higher than the lateral, with possible narrowing of the joint space. AR 155.

On March 16, 1998, James R. Guadagni, M.D., performed surgery on Plaintiff's left knee to repair a chronic anterior cruciate ligament ("ACL") tear and probable medial meniscal tear. She had a previous tear that was surgically repaired 15 years ago. AR 134.

On April 9, 1998, Plaintiff told Dr. Guadagni that her pain was worse than before the surgery. AR 137. She walked without a limp and had full range of motion. She had some degenerative arthritis and an ACL tear, but Dr. Guadagni did not know why she was having more pain. AR 139.

1  On May 5, 1998, Plaintiff reported that she was still having some pain and episodes of
2 instability.  Dr. Guadagni told Plaintiff that he had nothing else to offer her and explained that
3 although surgery would improve her instability, it may or may not help the pain.  He noted it was
4 uncertain how much of her pain was related to the episodes of instability.  AR 138.
5 Plaintiff had reconstructive surgery scheduled for June, but it had to be cancelled when she
6 became pregnant.  AR 137.

7  X-rays of Plaintiff's left knee taken on November 2, 2000, showed moderate degenerative
8 changes.  AR 516.

9  On November 3, 2000, Plaintiff began seeing J.R. Lee, M.D., for complaints of chronic
10 knee pain.  There was some muscle atrophy in the calf, but range of motion was full and she was
11 not limping.  He diagnosed traumatic arthritis of the left knee and prescribed Vioxx.  AR 515.

12  Plaintiff was seen in the emergency room on January 26, 2001, for complaints of back
13 pain.  She denied a history of back problems and thought that stress might be part of the problem.
14 AR 291.  She had tenderness in her back and limited range of motion.  Plaintiff was diagnosed
15 with musculoskeletal pain, muscle spasms and lumbosacral back pain.  AR 292.  She was given
16 Flexeril, Ibuprofen and Vicodin.  AR 292.

17  Plaintiff saw Dr. Lee on April 6, 2001.  Examination of her left knee revealed a mild
18 grinding sensation.  Plaintiff was not limping and had full range of motion.  He assessed a mild
19 flare up of degenerative knee arthritis, with minimal symptoms, and prescribed ibuprofen.  AR
20 514.

21  X-rays of Plaintiff's left knee taken on November 9, 2001, revealed moderate
22 degenerative changes and narrowing of the knee joint space as well as mild hypertrophic
23 spurring.  AR 309.

24  On March 30, 2002, Plaintiff went to the emergency room complaining of muscle cramps
25 in her back and chest.  She had tenderness in the lumbosacral region on the left with palpation,
26 but no spasms and good range of motion.  Her gait was normal.  She was diagnosed with
27 lumbosacral back pain and discharged with Tylenol with codeine.   AR 425-427.
28

In July 2002, Plaintiff was seen in the emergency room for back pain following lifting and stooping over her child. AR 198. She was diagnosed with a chest wall strain and thoracic back pain. AR 199.

In August 2002, Plaintiff reported a history of degenerative joint disease in her knees but reported that ibuprofen provided some improvement. She also reported improvement with her arthritis. She had full range of motion in her knees. AR 474.

August 27, 2002, x-rays of Plaintiff's lumbar spine revealed spasm with irritability of moderate to moderately severe degree, early degenerative changes, possible early disc disease at the upper levels and some disc space narrowing. AR 484.

Plaintiff was seen at Family Healthcare Network on September 3, 2002. She complained of "slight to mild" back pain that started after the delivery of her baby in March 2002. AR 473. Lumbar x-rays were normal with possible very early degenerative joint disease and/or disc narrowing in the lumbar spine. She was diagnosed with mid-back and low back pain with myalgia and degenerative joint disease.

On September 17, 2002, Plaintiff returned to Family Healthcare Network, complaining of left-sided chest pain, with little-to-no back pain. She was diagnosed with probable myalgia of the pectoral muscles and instructed on muscle stretching and breathing/relaxation techniques. AR 471.

On August 17, 2003, Plaintiff was seen in the emergency room for a left knee strain. She reported that she had chronic knee pain, but her pain became worse when she was mopping. She was diagnosed with a knee strain and discharged with a knee immobilizer. AR 168-174.

Plaintiff saw Dr. Lee on September 3, 2003. He noted that she had undergone 10 left knee operations since she was 10 years old, with the last surgery in 1998. Her pain has worsened over the last month. On examination, there was severe patellofemoral crepitus. The ligaments were very stable, she was able to bear her full weight and did not have a limping gait. He noted that the x-ray revealed posttraumatic arthritis. Although Plaintiff asked about total knee arthroplasty, Dr. Lee explained that there were no indications for it. He also did not feel that arthroscopy would help because her knee was not swollen. He ordered an MRI. AR 487.

Jonathan Gurdin, M.D., performed an orthopedic evaluation on Plaintiff on December 16, 2003. AR 490. She reported that she has had back pain since a car accident about five years ago. She has not had treatment for her back for about a year and was not currently taking medication. On examination, she walked slowly but did not show a definite limp. There was no difficulty getting on and off the examination table or lying down and sitting back up. Examination of her low back revealed slight tenderness in the midline at the lumbosacral level. There was slight generalized tenderness about the entire left knee joint, but no definite soft tissue swelling or joint effusion, although Dr. Gurdin noted that subtle changes would be difficult to detect with her obesity. Her ligaments were intact and there was no crepitus with motion.

Dr. Gurdin diagnosed prior internal derangements of the left knee with multiple surgeries, lumbar myofascitis with early degenerative changes and moderate obesity. He expected that her complaints would improve with weight loss and ongoing therapy. Presently, she could be on her feet for two hours at a time and for five to six hours out of an eight hour day. Sitting was not restricted. She would have difficulty climbing stairs, kneeling and squatting because of her left knee. Plaintiff appeared capable of lifting and carrying at least 20 pounds occasionally and 10 pounds frequently. AR 491.

On January 20, 2004, Dr. Lee noted that the January 2004, MRI revealed an old ACL rupture. He opined that her knee has arthritis but was very stable. He believed that most of her pain was from the arthritis. He gave Plaintiff a sample of Bextra. AR 511-512.

State Agency physician Sadda Reddy, M.D., completed a Physical Residual Functional Capacity Assessment form on February 10, 2004. AR 498. Dr. Reddy opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, could stand and/or walk for at least two hours in an eight hour workday, and could sit for about six hours an in eight hour workday. He recommended a sedentary RFC, opining that Plaintiff could never climb ladders, ropes and scaffolds and could occasionally climb ramps and stairs. She could occasionally stoop, kneel, crouch and crawl. This opinion was affirmed by State Agency physician James V. Glaser, M.D., on April 23, 2004. AR 505.

On April 6, 2004, Plaintiff was seen in the emergency room after falling down six steps. She did not report a history of prior back problems. Notes indicate that she "lost footing" and/or "slipped and fell." X-rays were normal. Plaintiff was diagnosed with musculoskeletal pain and prescribed Vicodin. AR 541-543, 547.

In May 2004, treatment notes indicate that Plaintiff fell down steps one month ago. On examination, neck passive range of motion revealed voluntary guarding and limited range of motion. Lindy Dugan, M.D., submitted a physical therapy referral and prescribed Darvocet. AR 538. Dr. Dugan discussed his concern about Plaintiff's need for medication stronger than Tylenol or Motrin and thought she may need other psychological interventions for dealing with her pain. AR 538.

Plaintiff returned to Dr. Lee on June 18, 2004, for evaluation of her left ACL rupture. Her knee was very stable and there was no ACL deficit. He noted that ACL reconstruction would not help her and that the January 2004, MRI only showed a questionable ACL problem. It was possible that her ACL may be torn from a previous injury but her knee is stable, so there would be no ACL deficiency. Dr. Lee noted that Plaintiff would have a period of disability from time to time and that her knee was moderately disabled so that she could not compete with the general population in the labor market. AR 509. X-rays taken the same day showed no evidence of fracture, dislocation, effusion or synovitis. Mild early degenerative changes were suspected. AR 510.

An MRI of Plaintiff's cervical spine performed on June 23, 2004, revealed mild disc degenerative changes, without significant spinal canal stenosis or additional discrete abnormality to account for her symptoms of left neck and arm pain. AR 529.

On December 13, 2004, Plaintiff was seen at San Juan Health Center for persistent left knee pain. Range of motion was within normal limits with mild discomfort over the medial aspect of the left knee. Jose Corvera, M.D., diagnosed chronic left knee pain and referred Plaintiff to an orthopedist for a second opinion. AR 523-524.

X-rays of her left knee taken on January 28, 2005, revealed moderate degenerative osteoarthritic changes. AR 520.

On March 14, 2005, Dr. Lee completed a Residual Functional Capacity Questionnaire. He last examined Plaintiff on June 18, 2004, and saw her approximately five times between November 3, 2000 and June 18, 2004. He diagnosed knee arthritis and stated that her prognosis was guarded. Her symptoms included pain and swelling and he listed ACL rupture as the clinical findings. Her impairments were expected to last longer than 12 months and he believed that Plaintiff's impairments were reasonably consistent with her symptoms and that she was not malingering. AR 552-553.

He expected her pain to frequently interfere with her ability to perform even simple work tasks, although he believed her capable of a low stress job. Plaintiff could sit for more than two hours at one time and could stand for two hours at one time. She could sit for a total of at least six hours in an eight hour day, but could stand/walk for less than two hours in an eight hour day. She did not need to elevate her legs with prolonged sitting and did not need a cane when occasionally standing/walking. She could rarely lift 10 pounds or less and never lift anything over 10 pounds. She could frequently look down, turn her head, look up and hold her head in a static position. She could occasionally twist, stoop, crouch, and climb ladders and stairs. Dr. Lee believed that Plaintiff would have good days and bad days. AR 552-556.

ALJ's Findings

After reviewing the medical evidence and testimony, the ALJ determined that Plaintiff had the severe impairments of moderate degenerative osteoarthritis of the left knee, mild cervical disc bulge, lumbar myofascitis and moderate obesity. AR 21. Despite these impairments, the ALJ determined that Plaintiff retained the RFC to perform a wide range of sedentary work limited by occasional postural restrictions. She was therefore not disabled. AR 23.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v.*

*Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3]  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (moderate degenerative osteoarthritis of the left knee, mild cervical disc bulge, lumbar

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

9

myofascitis and moderate obesity) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) is unable to perform her past relevant work; but (5) retains the RFC to perform a significant number of jobs in the national economy. AR 23-24.

Here, Plaintiff argues that the ALJ (1) erred in failing to adopt the limitations imposed by Dr. Lee; (2) erred in finding her husband's testimony not credible; and (3) erred in assessing Plaintiff's pain testimony.

## **DISCUSSION**

A.   Dr. Lee's Opinion

Plaintiff first argues that the ALJ erred in failing to adopt Dr. Lee's standing limitations set forth in his March 18, 2005, questionnaire.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a

1  treating physician, but differs only in his or her conclusions, the conclusions of the examining
2  physician are not "'substantial evidence.'"  *Orn,* 495 F.3d at 632; *Murray,* 722 F.2d at 501-502.
3  "By contrast, when an examining physician provides 'independent clinical findings that differ
4  from the findings of the treating physician' such findings are 'substantial evidence.'"  *Orn*, 496
5  F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985).  Independent clinical findings
6  can be either (1) diagnoses that differ from those offered by another physician and that are
7  supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2)
8  findings based on objective medical tests that the treating physician has not herself considered,
9  *see Andrews*, 53 F.3d at 1041.

10  If a treating physician's opinion is not giving controlling weight because it is not well
11  supported or because it is inconsistent with other substantial evidence in the record, the ALJ is
12  instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6)
13  in determining what weight to accord the opinion of the treating physician.  Those factors include
14  the "[l]ength of the treatment relationship and the frequency of examination" by the treating
15  physician; and the "nature and extent of the treatment relationship" between the patient and the
16  treating physician.  20 C.F.R. 404.1527(d)(2)(i)-(ii).  Other factors include the supportablility of
17  the opinion, consistency with the record as a whole, the specialization of the physician, and the
18  extent to which the physician is familiar with disability programs and evidentiary requirements.
19  20 C.F.R. § 404.1527(d)(3)-(6).  Even when contradicted by an opinion of an examining
20  physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to
21  deference." SSR 96-2p; *Orn*, 495 F.3d at 632-633.  "In many cases, a treating source's medical
22  opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the
23  test for controlling weight." SSR 96-2p; *Orn*, 495 F.3d at 633.

24  Here, the ALJ reviewed the medical evidence, including Dr. Lee's treatment notes and his
25  opinions as to Plaintiff's functional limitations.  Dr. Lee believed that Plaintiff could perform a
26  low stress job and could lift up to 10 pounds and sit for at least six hours, but could stand for less
27  than two hours. AR 22.  The ALJ also reviewed the contrasting opinion of Dr. Gurdin, who
28  examined Plaintiff and determined that she could be on her feet for two hours at a time, for five

to six hours total in an eight hour day. AR 22. He explained that he accorded Dr. Lee's opinion greater weight because he was a treating source, but did not accept his opinion that Plaintiff was unable to stand for two hours at a time. He reasoned that Plaintiff's ability to care for two small children would "preclude the ability to remain seated for this long during a typical day." AR 22.

Plaintiff contends, and the Court agrees, that this reason is not a valid reason for rejecting Dr. Lee's opinion. That Plaintiff cannot "remain seated for this long" does not necessarily mean that she can stand for two hours at one time. However, any error is harmless based on the totality of the medical evidence and the remainder of the ALJ's decision. *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion). Moreover, as Defendant points out, Dr. Lee's opinion was inherently ambiguous and somewhat inconsistent- he stated that she could stand for two hours at one time, but also stated that she could stand/walk for less than two hours in an eight hour day. The ALJ was entitled to resolve this ambiguity. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

In rejecting Dr. Lee's opinion that Plaintiff could not stand for two hours at a time, the ALJ adopted the opinions of Dr. Gurdin and State Agency physician Reddy, who both thought that Plaintiff could stand for two hours at a time. AR 22. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultive examiner's opinion is substantial evidence).

The ALJ also explained that Dr. Lee consistently found that Plaintiff's knee was very stable and declined to perform an ACL reconstruction. AR 21. Dr. Lee's treatment notes indicated that Plaintiff routinely had no swelling, effusion or ligament laxity. AR 22. Dr. Lee did not believe that Plaintiff needed a cane, nor did he believe that she needed to elevate her legs. AR 22. A lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

In discussing his rejection of Dr. Lee's standing limitation, the ALJ also cited Plaintiff's daily activities. For example, she is able to care for her children, ages three and six. She is able to drive and goes shopping with her husband's assistance. She carries her laundry basket across

the parking lot to the laundromat and performs general cleaning, sweeping, dusting, mopping, scrubbing and organizing. AR 22.

The Court is mindful of the recent decision in *Orn v. Astrue,* discussed above and cited by Plaintiff. However, where the treating physician's opinion is not supported in the first instance, as here, *Orn v. Astrue* is not instructive. Dr. Lee's limitation of Plaintiff's standing ability was contradicted by the objective evidence, the remaining medical opinions, and Plaintiff's activities.

Therefore, given the ALJ's finding that Plaintiff retained a sedentary RFC with occasional postural limitations, the Court finds that the ALJ properly relied on the opinions of Dr. Gurdin and Dr. Reddy regarding Plaintiff's ability to stand. While Plaintiff may disagree with the RFC finding, it appears that the ALJ gave her the benefit of the doubt in finding her limited to sedentary work. The RFC finding is supported by substantial evidence and free of legal error.

B.    Plaintiff's Husband's Testimony

Next, Plaintiff argues that the ALJ erred in finding her husband's testimony not credible.

Lay witness testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ may reject such testimony if he does so expressly, in which case "he must give reasons that are germane to each witness." *Id.; see also Lewis v. Apfel,* 236 F.3d 503, 511 (2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted)).

Plaintiff specifically points to her husband's testimony that she needs to take seven to eight breaks a day, for about 15-20 minutes each, and that she has been using a cane for about a month. AR 592. In rejecting Mr. Ford's testimony, the ALJ cited the contradictory medical evidence, including Plaintiff's report to Dr. Gurdin in December 2003, that she was not taking any medication or receiving any therapy and Dr. Lee's consistent lack of objective findings relating to her knee. AR 21. The ALJ also cited Dr. Lee's March 2005, statement that Plaintiff did not need to use a cane or elevate her legs. AR 22, 555. Inconsistency with medical evidence

is a valid reason for rejecting a lay witness's testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Plaintiff attempts to show error by arguing that Dr. Lee based his March 2005, opinion on his last examination of Plaintiff, which was over nine months earlier, and that she has deteriorated since that date. As Mr. Ford testified that she started using the cane one month before the hearing, she argues that his testimony is not necessarily inconsistent. While this may be so, it certainly does not render his testimony *supported* by the record.

Plaintiff bears the burden of proving that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. Since her relatively unremarkable June 2004, visit with Dr. Lee, Plaintiff was seen twice for knee pain. On December 13, 2004, range of motion was within normal limits with mild discomfort over the medial aspect of the left knee. AR 523-524. X-rays of her left knee taken on January 28, 2005, revealed moderate degenerative osteoarthritic changes. AR 520. While the evidence supports a knee impairment, a finding reflected in the ALJ's sedentary RFC finding, it simply doesn't support Plaintiff's suggestion that she deteriorated to the point of needing a cane.

The ALJ's treatment of Mr. Ford's testimony is supported by substantial evidence and free of legal error.

C.     Plaintiff's Pain Testimony

Finally, Plaintiff contends that the ALJ erred by not crediting her testimony that her pain precludes even sedentary work.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment," *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In rejecting Plaintiff's pain testimony, the ALJ first explained that Plaintiff's ability to care for her children conflicted with her testimony. AR 22. She is able to get her oldest child off to school and cares for her three year old at home. The ALJ also noted that Plaintiff drives, goes shopping with the help of her husband, takes care of her personal needs and climbs 13 stairs to her bedroom. She does her laundry at a laundromat and does general cleaning, dusting, mopping, scrubbing and organizing. AR 22. The ALJ was entitled to contrast Plaintiff's daily activities with her testimony. *Bunnell v. Sullivan,* 947 F.2d 341, 346-347 (9th Cir. 1991).

The ALJ also noted that Plaintiff has generally received conservative treatment, that she has received little medical treatment for her mild lumbar degeneration, and that she reported good relief of her symptoms with ibuprofen. AR 22. These, too, are proper considerations. *Id.*

The Court finds that the ALJ's credibility analysis was supported by substantial evidence and free of legal error.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in

1 | favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,
2 | Roberta L. Ford.

    IT IS SO ORDERED.

    **Dated:**    **February 8, 2008**             /s/ **Dennis L. Beck**
                                                               UNITED STATES MAGISTRATE JUDGE